## SISKO v. CHAS. KURZ & CO. et al.

### Civ. No. 11153.

United States District Court,
E. D. Pennsylvania.

May 25, 1951.

---

Freedman, Landy & Lorry, Philadelphia, Pa., for plaintiff.

Krusen, Evans & Shaw, Philadelphia, Pa., for defendants.

568

· CLARY, District Judge.

In this action tried to the Court without a jury, plaintiff claims damages of the defendant shipowners for bodily harm sustained by him as a result of alleged unseaworthiness of the S.S. Andrew A. Humphreys upon which he was employed as a Quartermaster and/or negligence of the officers and crew of said vessel. The evidence discloses that the plaintiff is presently suffering from active pulmonary tuberculosis which he claims was either caused by or aggravated and activated by the action of the defendants. Upon pleadings and proof I make the following

## Findings of Fact.

1. Commencing September 6, 1949, plaintiff voluntarily entered into five separate and consecutive contracts of employment aboard the Steamship Andrew A. Humphreys in the capacity of Quartermaster, the last employment terminating on December 2, 1949.

2. During the above period of time plaintiff made five voyages as follows:

September 6, 1949 to September 25, 1949, Galveston, Texas to Tampa, Florida to Boston, Massachusetts.

September 26, 1949 to October 18, 1949, Boston, Massachusetts to Cuba to New York, N. Y.

October 19, 1949 to November 7, 1949, New York, N. Y. to Houston, Texas.

November 8, 1949 to November 19, 1949, Houston, Texas to Mobile, Alabama.

November 20, 1949 to December 2, 1949, Mobile, Alabama to Norco, Louisiana to Philadelphia, Pennsylvania.

3. At no time from September 6, 1949 to December 2, 1949 were there any long or protracted cold spells or periods of bad weather. The air temperatures during the voyages in question ranged in the main between the low 60s and low 80s and there were very few days when the outside temperatures were so low as to require more than moderate heating of quarters.

4. The plaintiff was assigned to living quarters aboard the Andrew A. Humphreys which were habitable, dry and properly ventilated and heated. At no time during his periods of employment did plaintiff make any complaint to his superior officers of damp and cold living quarters.

5. During the early part of November, at Houston, Texas, plaintiff contracted a cold which up to November 22, 1949 did not require either treatment or hospitalization.

6. On or about November 22, 1949, plaintiff consulted a private physician in a small sea coast town near New Orleans, who after examination pronounced him fit for duty. Thereafter, on the same day, plaintiff first reported his cold to the Master and while the Andrew A. Humphreys was berthed at Norco, Louisiana, plaintiff was furnished with a Master's certificate to obtain medical care and attention at the United States Marine Hospital, New Orleans, Louisiana. Plaintiff was there advised he had pleurisy and was furnished with medicine for a cough and cold. However, plaintiff informed his superiors that he had been pronounced fit for duty and returned to the ship for duty.

7. On November 26, 1949 at about 2:30 a. m., while off duty, plaintiff complained of pain in the stomach and was immediately examined by the Master of the vessel, who upon examination found normal temperature, pulse and respiration, and no visible evidence of illness. Thereupon, as a result of plaintiff's complaint, he was relieved from all duty, confined to bed, placed on a soft diet and his meals were served to him in his quarters. He was examined and observed at frequent daily intervals by either the Chief Mate or Captain and at all times his temperature, pulse and respiration were normal.

8. Following plaintiff's incapacity and at a time when the vessel was approximately twelve miles off shore from Key West, Florida, plaintiff requested the Master of the vessel to wireless the Coast Guard and have either a plane or boat effect his removal to shore as an emergency case. At that time he complained of pain in the region of the stomach but because of normal temperature, pulse and respiration and lack of visible evidence of any emergency condition, the Master denied his request.

9. The Master's denial of plaintiff's request was under all the circumstances of the case reasonable and the Master acted in all respects as a reasonable prudent person would have acted under the circumstances.

10. Upon arrival of the vessel at Philadelphia, plaintiff was furnished with a medical certificate and sent to the United States Public Health Service for examination and treatment on complaints of pain in the left shoulder, left side and abdomen. After examination and treatment, including x-ray, he was pronounced fit for duty and sent back to the ship. Out-patient care was furnished plaintiff by the United States Public Health Service at Philadelphia, from November 30, 1949 to December 6, 1949.

11. Early on the morning of December 2, 1949, when the ship was preparing to sail from the Port of Philadelphia to Antwerp, Belgium, plaintiff failed to turn to and perform his duties in securing the ship for sea. Plaintiff at that time complained of feeling ill and unable to work. The Master recommended that he leave the ship, which plaintiff refused to do, and the Master thereupon ordered plaintiff removed from the ship and his employment terminated because of physical disability. Plaintiff let the ship "under protest".

12. Thereafter, treatment and examination at the United States Public Health Service in Philadelphia revealed, through chest x-ray, lung congestion and lesions with a diagnosis of pulmonary tuberculosis, and on December 6, 1949 plaintiff was transferred to the Marine Hospital at Stapleton, L. I.

13. Plaintiff at the time of his entry into the hospital and up to the present time has suffered from a moderately advanced case of pulmonary tuberculosis.

14. Defendants furnished plaintiff at all times between September 6, 1949 and December 2, 1949 with a safe place to perform his duties.

15. Defendants furnished plaintiff a safe and seaworthy vessel and appurtenances at all times between September 6, 1949 and December 2, 1949.

16. Defendants at all times between September 6, 1949 and December 2, 1949 provided plaintiff with proper and adequate medical care, attention and maintenance for the alleviation and cure of plaintiff's illness.

17. The Master of defendants' vessel in denying plaintiff's request to be put ashore off Key West, Florida, did not act in a negligent or imprudent manner.

18. The defendants were not negligent.

19. The pulmonary tuberculosis from which plaintiff is presently suffering was not caused by or aggravated and activated by any condition of unseaworthiness of the vessel or any act of negligence on the part of the defendants, its officers of the vessel or members of the crew.

## Discussion.

This case involved very simple fact issues. Plaintiff had, as in any civil case, the burden of establishing his claim by a preponderance of the evidence. In order to do so in this case he had two substantial hurdles to overcome. First, he had to prove to the satisfaction of the Court the damp and cold condition of his living quarters and, second, that living in such damp and cold quarters for the period of time claimed would either cause his tubercular condition or aggravate and activate a pre-existing dormant tubercular condition. As indicated in the findings of fact set forth above, plaintiff failed to get over the first hurdle. Had he done so, he would still have stubbed his toe on the second. Medical testimony was conflicting on the question of the effect of damp and cold living quarters in bringing about the condition from which the plaintiff is presently suffering. Plaintiff had the burden of establishing causal connection, and he failed to do so. The medical evidence adduced by the defendants convinced me that even assuming the truth of plaintiff's allegations of damp and cold quarters, it was not a causative factor in bringing about his condition. Because of plaintiff's serious condition, this case appeals very strongly to the sympathy of the Court. However, the facts must be determined from the record

before me and they fail to establish defendants' liability.

Conclusions of Law.

1. The vessel "Andrew A. Humphreys" was seaworthy.

2. The defendants by their officers, agents and members of the crew were not negligent.

3. The defendants by their officers, agents and members of the crew rendered the plaintiff proper medical assistance.

4. The plaintiff's tubercular condition did not result from any unseaworthiness of the "Andrew A. Humphreys", nor the negligence of the defendants.

5. The Master of the "Andrew A. Humphreys" was not negligent in denying plaintiff's request to be put ashore at Key West.

6. Defendants are entitled to judgment in their favor.