Raymond QUINTIN, Libelant-Appellant,

v.

SPRAGUE STEAMSHIP COMPANY, Respondent-Appellee.

No. 116, Docket 24775.

United States Court of Appeals Second Circuit.

Argued Dec. 5, 1957.

Decided Feb. 13, 1958.

Henry Fogler, New York City, for libelant-appellant, Raymond Quintin.

Edward C. Kalaidjian, New York City, (Thacher, Proffitt, Prizer, Crawley & Wood, Robert S. Stitt, New York City, on the brief), for respondent-appellee, Sprague S. S. Co.

Before CLARK, Chief Judge, MOORE, Circuit Judge, and SMITH, District Judge.

MOORE, Circuit Judge.

Libelant-appellant, Raymond Quintin, a seaman, filed a libel against Sprague Steamship Company (respondent-appellee) and The Texas Company (respondent) for damages, maintenance and cure, claiming that he had contracted tuberculosis or that this disease had been aggravated because of appellee's negligence and the unseaworthy condition of the vessels of both respondents during the times he was employed thereon. The trial court awarded appellant $1,715.80 against The Texas Company for maintenance and cure from February 1953 to September 1953 less costs and otherwise dismissed the libels against both respond-ents. Libelant does not challenge the dismissal of his libel so far as it sought recovery for aggravation of the disease due to the alleged unseaworthiness of a Sprague collier, the S.S. Plymouth, and a Texas Company tanker, the S.S. Minnesota. The appeal is addressed solely to the adverse findings made below on the claim that libelant contracted tuberculosis aboard another Sprague collier, the S.S. P. W. Sprague and that the unseaworthiness of this vessel aggravated the disease.

Libelant was employed as a seaman on the S.S. P. W. Sprague from October 8, 1948 to July 26, 1949 when he signed off to take a vacation. From November 1949 to August 1950 he served as a seaman on the S.S. Plymouth. After sailing for about four months on another ship not owned by either respondent, in February 1951 he signed on as a seaman aboard the S.S. Minnesota. Prior to July 1951 he was in seemingly good health, although he had had a chronic cough for about two and one-half years which he attributed to smoking. He had had no chest X-rays taken since 1945. On July 11, 1951, while still aboard the S.S. Minnesota, he began to cough up blood. An X-ray examination performed at San Pedro, California, on July 13, 1951, revealed that he had an advanced tubercular lesion in the upper lobe of his right lung with a cavity therein. He then became a patient at various marine hospitals until February 1953. During that time he underwent two surgical operations in which the two upper lobes of his right lung were excised. In October 1953 he returned to his work as a seaman.

For six of the ten months he served on the S.S. P. W. Sprague libelant shared quarters with another seaman, John Sisko, who left the ship in May 1949. In November 1949, complaining of a cold, Sisko went to a Public Health hospital and in early December 1949 was diagnosed as having advanced tubercular lesions.

Libelant's theory is that the evidence compelled the trial court to find

that the source of his tuberculosis was Sisko. This Court, however, must accept the findings of the trial court unless "left with the definite and firm conviction that a mistake has been committed" (McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 8, 99 L.Ed. 20). Accordingly, for libelant to prevail he must show that the court below was definitely in error in concluding that "The libelant has failed to prove that he contracted tuberculosis in the course of his employment aboard the P. W. Sprague or the Plymouth, or that any pre-existing infection was aggravated by the living or other conditions on either of those vessels" (Conclusion of Law, No. 2).

■ There was competent evidence which, if believed, conclusively proved that libelant was already suffering from tuberculosis prior to signing on the S.S. P. W. Sprague, and that he could not have been harmed from further exposure. Thus, there is no need to determine whether or not Sisko had active tuberculosis while he was rooming with libelant aboard the S.S. P. W. Sprague.

Dr. Eglee, a specialist in chest diseases, testified for respondents that the X-ray report on libelant prepared after his admission to the Marine Hospital in San Francisco, in July 1951, revealed that his case was "far advanced" and had been developing for "probably years." From his examination of X-rays taken of libelant's chest in 1945 during a pre-employment physical examination, Dr. Eglee concluded that libelant "had a very definite tuberculosis in 1945." These X-rays showed "a very definite infiltration in the right apex"—the precise spot at which libelant's advanced case of tuberculosis was present in 1951. Dr. Eglee also testified that once a person develops active tuberculosis, he possesses an immunity from subsequent infection from outside sources. Libelant's experts did not contradict this fact and the libelant does not assail its accuracy here.

Respondents' second expert, Dr. Ghiselin, a specialist in radiology, likewise testified from an examination of libelant's 1945 X-rays that in his right apex "a lesion was present and that it was in all probability tubercular." Prolonged and vigorous cross-examination of these two experts failed to uncover any fallacies in their interpretation of the 1945 X-rays. Libelant's expert, Dr. Altschul, an internist who had had considerable experience in the diagnosis and treatment of tuberculosis, stated that in his opinion libelant's 1945 X-rays did not reveal active tuberculosis. He explained the fact that the right apex showed up on the negative as lighter than the left was due to poor focus on one of the lungs caused by the position of the X-ray tube. On the other hand, respondents' expert radiologist, Dr. Ghiselin, when asked whether libelant's two films were taken in a good position, stated that "they are excellently centered and both of them show no rotation."

From the expert testimony it was reasonable for the trial court to believe the "two medical experts with impressive qualifications called by the respondent Sprague" and to find that "there is no rational basis for me to prefer the opinion of Quintin's expert over the opinions of the two experts who testified to the contrary" (Findings, Nos. 41, 43). Likewise the trial court was warranted in rejecting the libelant's testimony as to the dampness and lack of ventilation in his quarters aboard the ship and in accepting the testimony of his other roommate, De Bartolo, as well as that of the hull inspector of the Coast Guard and that of the chief officer of the ship, all of whom contradicted libelant on this issue. In addition there was other substantial evidence to support the court's findings that libelant's quarters were not unseaworthy and that conditions on board did not aggravate his disease. Libelant, apparently in good health, worked on ships for almost two years after leaving the S.S. P. W. Sprague. It would be both contrary to fact and unwarranted speculation to assume that libelant's disease was contracted because of, or aggravated by, his working conditions aboard the S.S. P. W. Sprague.

Libelant has made two motions to have this Court, in effect, take judicial notice of the proceedings in an action brought by Sisko against Chas. Kurz & Co., and Keystone Shipping Co. in the United States District Court for the Eastern District of Pennsylvania to recover damages allegedly suffered by contracting tuberculosis while serving aboard the S.S. "Andrew A. Humphreys" in the Fall of 1949. Sisko's suit was tried before the court in April 1951 (Sisko v. Chas. Kurz & Co., D.C., 97 F.Supp. 567) and dismissed. The respondents used portions of Sisko's testimony at that trial to impeach him on the trial of this libel.

Libelant contends that the testimony in Sisko's suit conclusively establishes that Sisko had tuberculosis while rooming with libelant aboard the S.S. P.W. Sprague and that respondent Sprague perpetrated a fraud upon the court below and upon the libelant by concealing this testimony and by successfully opposing the admission of the minutes of such testimony in the evidence of this present libel.

In deciding this appeal it was unnecessary to pass upon the validity of the finding that Sisko did not have tuberculosis while abroad the S.S. P. W. Sprague because credible medical testimony established that libelant's condition did not originate from or become aggravated by Sisko. Libelant could have called the expert witnesses who testified in Sisko's suit and was given that opportunity by the trial court. Libelant, however, could not deprive respondents of their right to cross-examine these witnesses by the simple expedient of introducing the minutes of their prior testimony in another proceeding to which neither libelant nor Sprague were parties. The trial court had no alternative but to refuse to accept such evidence.

Actually the medical testimony in Sisko's 1951 Pennsylvania trial would not have helped libelant because Judge Clary found that the medical evidence, assuming damp and cold quarters, convinced him that such a situation "was not a caus-ative factor in bringing about his condition." As to libelant's efforts to make Sisko the source of original infection, he must overcome the medical testimony both as to libelant's immunity from further infection and the probable commencement of Sisko's active tuberculosis. In the Pennsylvania suit one of the doctors testified that although it was very difficult to make definitive statements he would say that Sisko had lesions for a minimum of four to six months prior to December 7, 1949. Even a date six months prior thereto would have been subsequent to the last time that Sisko and libelant were shipmates.

Libelant would also make much of the fact that Sisko had colds and other ailments prior to 1948 and 1949 but this does not prove that he had tuberculosis. Even his November 1949 medical examinations revealed normal temperature, pulse and respiration (97 F.Supp. 567, 568). Certainly Sisko did not believe he had tuberculosis when working on the S.S. P. W. Sprague.

The findings of fact and conclusions of law being supported by substantial credible evidence, the decree is affirmed. The motions are denied.

CLARK, Chief Judge (dissenting).

My brothers characterize libelant's theory to be that the evidence compelled the trial court to find the source of his tuberculosis in seaman Sisko, thus supporting a recovery on the basis of unseaworthiness. See Keen v. Overseas Tankship Corp., 2 Cir., 194 F.2d 515, certiorari denied Overseas Tankship Corp. v. Keen, 343 U.S. 966, 72 S.Ct. 1061, 96 L.Ed. 1363; and Boudoin v. Lykes Bros. S. S. Co., 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354, amended 350 U.S. 811, 76 S.Ct. 38, 100 L.Ed. 727. But I think this overstates libelant's argument to this court to his disadvantage and leads to their setting up of a straw man which they then easily destroy. For, as they point out, there is substantial, though not conclusory, evidence in the record that libelant actually had tuberculosis before he shipped aboard the Sprague. If this is

true he could not have contracted the disease while with Sisko. But the lower court specifically avoided deciding whether or not he had tuberculosis at that time.[1] Therefore this alleged condition should not be considered so as to defeat his appeal and we should review what the trial court actually decided. It found that "[t]here was no proof whatever that Sisko had tuberculosis while he roomed with Quintin." Finding 45. Therefore it rejected libelant's theory that the Sprague was unseaworthy, and denied recovery. If Finding 45 is to be held erroneous, as I believe it must be, the case should be remanded for further findings.

Finding 45 is contradicted by considerable testimony and supported by little. From the record it appears that Sisko, who had been living with libelant aboard the Sprague for a number of months, left the ship on May 30, 1949, thereafter was rejected for service on the Diddo because of a hernia, and subsequently shipped out on the Humphreys. He went to the hospital from the Humphreys in November 1949—five months after leaving libelant and the Sprague—and was diagnosed as a moderately advanced tubercular. Libelant's doctor at the trial, testifying on the basis of Sisko's medical history, was of the opinion that Sisko had T. B. while aboard the Sprague. The doctor also testified that Sisko contracted the disease from Mae Turner. Miss Turner and Sisko were married sometime in 1941 and lived together for ten days. They lived together again for two days in 1946 during an attempted reconciliation. There was evidence that Miss Turner had communicable tuberculosis during these periods. Regardless of this rela-

tionship, however, the testimony of Sisko's October condition showed that he was afflicted while aboard the Sprague. On cross examination, respondent's doctor, testifying on the basis of a report prepared in 1950 concerning Sisko's condition, said that Sisko could have had the disease for a number of years prior to that time. These facts are not compatible with the finding that "[t]here was no proof whatever that Sisko had tuberculosis while he roomed with Quintin." That finding seems to be based on statements by officers and crew that Sisko appeared healthy and never complained while on the Sprague and that he must have been examined and found free from T. B. when rejected for duty on the Diddo. This latter finding is speculative at best.

In my view, therefore, the case should be remanded for definitive findings concerning the source of Quintin's condition. This is unfortunate in view of the long delays in this case, but I believe it necessary in the interest of justice. The action was begun on September 29, 1952, and the six-day trial was completed on January 26, 1955. Not until February 25, 1957, did the trial judge file his opinion and findings, D.C.S.D.N.Y., 149 F. Supp. 226—a delay which is indeed distressing, since final judgment was not had until June 11, 1957. That the findings are ambiguous and not truly dispositive of the case may be due to the delay; we have often emphasized the value of fact findings made at the conclusion of the testimony.[2] That libelant's counsel has pressed upon us with undue assiduity certain unnecessary motions involving another case of course must not blind us to his client's proper claims.

---

1. After reviewing the expert testimony concerning whether or not libelant had tuberculosis in 1945, the court found: "43. It is always a delicate matter for a layman to decide matters on which experts in the field are in sharp disagreement, and in this case there is no rational basis for me to prefer the opinion of Quintin's expert over the opinions of the two experts who testified to the contrary." This is hardly a finding that libelant did have tuberculosis in 1945.

2. See Hellenic Lines v. S.S. Exmouth, 2 Cir., 253 F.2d 473, note 1; Polarus S.S. Co. v. The Sandefjord, 2 Cir., 236 F.2d 270, 272, certiorari denied Viriks Rederi A/S v. Polarus S.S. Co., 352 U.S. 982, 77 S.Ct. 383, 1 L.Ed.2d 365; Hecht, Levis & Kahn, Inc. v. The President Buchanan, 2 Cir., 236 F.2d 627, 629; Grace Line v. The C. Hayward Meseck, D.C.S.D.N.Y., 150 F.Supp. 425, affirmed 2 Cir., 248 F.2d 736.