Alex SAMANSKI, Appellant,

v.

**MOBILE SEAFOOD COMPANY, INC.,**
Appellee.

No. 17114.

United States Court of Appeals
Fifth Circuit.

Aug. 27, 1958.

Ross Diamond, Jr., Mobile, Ala., for appellant.

Alex T. Howard, Mobile, Ala., for appellee.

Before HUTCHESON, Chief Judge, and JONES and WISDOM, Circuit Judges.

JONES, Circuit Judge.

The plaintiff in the district court and appellant here, Alex Samanski, had been a fisherman out of Gulf ports for most of his adult life. Such had also been the career of Samanski's friend, Robert Sanders. They had, on occasions, sailed together. They had not been aboard the same boat for about a year prior to July 1, 1953. About that time they were employed on the fishing smack "Goldie", owned and operated by Mobile Seafood Company, Inc., the appellee. On this occasion they made three voyages together. They, with one or two others, shared a room whose dimensions were estimated as being a little over six feet in height with a width of ten feet and a length of fifteen feet. It had no port holes but received fresh air through overhead ventilators. This room also served as the ship's galley and messhall. Between July 1, 1953, and August 19, 1953, Samanski and Sanders made three voyages. Thereafter these men were not members of any fishing crew together. For a couple of months prior to June 4, 1954, Sanders was employed as cook on the Goldie. He left the Goldie on that day and was taken on that day to the United States Public Health Hospital at New Orleans where a diagnosis revealed that he had pulmonary tuberculosis. Samanski took Sanders' place as cook on the Goldie and moved into his bunk without change of bedding. On July 27, 1954, Samanski left the Goldie, being suspected of having tuberculosis. He was hospitalized for observation from August 2 through October 26 of 1954. There was no finding at that time that he was tubercular and he returned to duty on the Goldie. On January 5, 1955, Samanski was again hospitalized and on this occasion it was found that he then had pulmonary tuberculosis. Thereafter, from time to time, he was a patient in various hospitals.

Samanski brought suit against the corporate owner of the Goldie under the Jones Act, 46 U.S.C.A. § 688, and the general maritime law to recover damages for the tuberculosis which he alleged he had contracted aboard the Goldie as the result of the unseaworthiness of the vessel or the negligence of its owner. Samanski and Sanders testified for the plaintiff. The president of the vessel's owner who was also its general manager, testified for the defendant. By agreement of the parties, the plaintiff Samanski was permitted to introduce copies of hospital records of Samanski and Sanders, a clinical abstract of the case of Samanski signed by a surgeon of the United States Public Health Hospital at New Orleans, and a letter from another such surgeon to Samanski's attorney stating that Samanski should not return to his former occupation as a fisherman.

Sanders testified that Samanski was a friend whom he had known for years, that when not at work on a boat Samanski "would get drunk like the rest of us" in "any bar room we would go to".

They would go, Sanders testified, to the boat to do their drinking where they were "safe from the law".

The plaintiff had intended to call as his witness a graduate and licensed physician who had never examined the plaintiff but who would testify as an expert. An emergency prevented the doctor from appearing at the trial. Out of the presence of the jury counsel for the plaintiff stated that he would expect the doctor

"* * * to testify that he has reviewed the medical reports and records that are in evidence; that from these records, he is of the opinion that Sanders' tuberculosis was far advanced and that he probably had it during the summer months of 1953; that from the records, there is no evidence that Samanski had tuberculosis prior to 1954; that tuberculosis is a disease caused by a germ and that it is only contracted by the transmitting of the germ; that drinking alcohol or not taking the proper care of oneself could lower a person's resistance and make him more susceptible, should he come in contact with the germ, but that it, the drinking of alcohol and not taking care of oneself, certainly would not cause tuberculosis; that based upon the hypothesis that Sanders and Samanski shared this small room aboard the 'Goldie' for a period beginning approximately the first of July, 1953, and ending August 19th, 1953, and further based upon assumed facts that Samanski replaced Sanders on June 4th, 1954; that based on these assumed facts and the knowledge gained from the medical reports in evidence, it is his opinion that the assumed facts could have caused Samanski's tuberculosis condition; further, it would be his opinion that based upon the same assumed facts and medical records, that it probably did cause his tuberculosis condition; he would admit that there was no way of being certain, and that it was certainly possible that he could have contracted it elsewhere."

The statement was dictated into the record by the attorney for the plaintiff and the judge later informed the jury that the "statement has been stipulated to by the attorney for the defendant."

It would seem that the defendant is precluded by its stipulation from urging, as it attempts to do, the insufficiency of the hypothesis upon which the expert medical testimony was based. However, this testimony, as stipulated and as the plaintiff's counsel expected it to be, was that the "assumed facts", that is the sharing by Samanski of a room on the boat with Sanders and others for about six weeks in 1953 and the taking over by Samanski of Sanders' bunk nine and a half months later, could have caused and probably did cause Samanski's tuberculosis, but there was no way of being certain and that it was certainly possible he contracted it elsewhere.

Judicial notice may be taken of the infectious character of pulmonary tuberculosis. United States v. McIver, 4 Cir., 1935, 77 F.2d 208; 31 C.J.S. Evidence § 79, p. 666.

The least that the plaintiff was required to prove was that his tubercular condition was probably caused by the occurrences on board the vessel. Inter-Caribbean Shipping Corporation v. Sentilles, 5 Cir., 1958, 256 F.2d 156; Ohio Casualty Insurance Co. v. Brown, 5 Cir., 1957, 241 F.2d 795. True it is that the word "probable" is used in the doctor's testimony as stipulated, but in view of the equivocal character of the statement, the uncontradicted facts, and our judicially noticed knowledge of the characteristics of pulmonary tuberculosis, we conclude as did the trial court that any verdict and judgment for the plaintiff would be based on conjecture. There was no error in directing a verdict for the defendant.

Having disposed of the case on the insufficiency of the proof of causation, we do not come to the questions as to the defendant's negligence or as to whether

the vessel was seaworthy. Cf. Kane v. American Tankers Corporation, 2 Cir., 1955, 219 F.2d 637; Quintin v. Sprague Steamship Co., 2 Cir., 1958, 252 F.2d 812.

The judgment of the district court is Affirmed.