BOUDOIN *v.* LYKES BROTHERS STEAMSHIP
CO., INC.

No. 406.   Argued February 11, 1955.—Decided February 28, 1955.

*Raymond H. Kierr* argued the cause for petitioner.
With him on the brief was *Samuel C. Gainsburgh.*

*Andrew R. Martinez* argued the cause for respondent.
With him on the brief were *Jos. M. Rault* and *William
E. Wright.*

*John J. Burns* filed a brief for the American Merchant
Marine Institute, Inc., as *amicus curiae*, urging affirmance.

MR. JUSTICE DOUGLAS delivered the opinion of the
Court.

This is a suit by an American seaman against the owner
and operator of an ocean freighter, the *Mason Lykes,* on
which he was formerly employed.   He based his claim
for recovery both on negligence and on breach of the
warranty of seaworthiness.   The case was tried by the

court upon waiver of jury. The District Court found for the plaintiff, holding that the shipowner breached its warranty of seaworthiness and that its officers were negligent. 112 F. Supp. 177. The Court of Appeals reversed, 211 F. 2d 618. We granted certiorari to resolve a seeming conflict between that opinion and *Keen* v. *Overseas Tankship Corp.*, 194 F. 2d 515, decided by the Court of Appeals for the Second Circuit. 348 U. S. 814.

Plaintiff was employed in the engine department as an oiler. The ship had a deck maintenance man, named Manuel Gonzales. Plaintiff's injury was inflicted by Gonzales, who, during the course of a night's drinking party, went to plaintiff's room and took a bottle of brandy from under plaintiff's bed. Plaintiff awoke, startled; and Gonzales attacked him with the bottle, causing severe injuries.

The District Court placed liability for breach of the warranty of seaworthiness on the holding of the *Keen* case, where Judge Learned Hand wrote:

"The warranty of seaworthiness as to hull and gear has never meant that the ship shall withstand every violence of wind and weather; all it means is that she shall be reasonably fit for the voyage in question. Applied to a seaman, such a warranty is, not that the seaman is competent to meet all contingencies; but that he is equal in disposition and seamanship to the ordinary men in the calling." 194 F. 2d, at 518.

The District Court found that Gonzales was not "equal in disposition and seamanship to the ordinary men in the calling." 112 F. Supp., at 180.

The assault by Gonzales on plaintiff occurred in the early morning of November 25, 1949. This happened during the course of a drinking party on board in which much liquor was consumed, Gonzales drinking nearly a fifth. Gonzales was, indeed, drunk when he assaulted plaintiff. The evidence is disputed; but the District

Court found that shortly after Gonzales struck plaintiff with the bottle, he returned with a large knife which he also intended to use on him. When plaintiff was taken to the ship's hospital, Gonzales created a disturbance outside—threatening the mate, trying to enter the sick bay, and offering to give blood to plaintiff for a transfusion. Those events followed on the heels of the assault.

About six hours after the assault, Gonzales was ordered to the master's cabin, where he refused to make any statement about the assault. Later he was ordered to clean the ship's hospital. Instead of doing that, he left the ship against orders. Early in the afternoon, Gonzales returned to the ship with bottles of liquor, at which time the captain apprehended him, took the bottles away, and placed him in irons—a step which the captain testified he seldom used.

The next day, November 26, Gonzales left the vessel without leave and did not return until the morning of November 28, when he was logged for disobedience of orders and fined for being absent without leave. On return of the *Mason Lykes* to the United States, Gonzales was discharged by the captain, though, since that time, he has served on respondent's vessels.

On the basis of these facts, the District Court found that Gonzales was "a person of dangerous propensities and proclivities" at the time of his assault on plaintiff; that Gonzales was "a person of violent character, belligerent disposition, excessive drinking habits, disposed to fighting and making threats and assaults." 112 F. Supp., at 179.

We think the record does not warrant rejection of the District Court's findings and that the findings warrant recovery for breach of the warranty of seaworthiness.

The warranty of seaworthiness is a species of liability without fault. *The Osceola,* 189 U. S. 158; *Seas Shipping Co.* v. *Sieracki,* 328 U. S. 85, 90–94. Yet it does not

mean that the shipowner is liable for injuries "resulting from every sailors' brawl," as Judge Learned Hand put it in *Jones* v. *Lykes Bros. Steamship Co.,* 204 F. 2d 815, 816. It does not mean that the owner is liable every time a seaman gets drunk and does damage to a member of the crew. It does not mean that the owner is liable for injuries from all the fisticuffs on shipboard.

> "All men are to some degree irascible; every workman is apt to be angry when a fellow complains of his work to their common superior; and some will harbor their resentment and provoke a quarrel over it even after the lapse of several hours. Sailors lead a rough life and are more apt to use their fists than office employees; what will seem to sedentary and protected persons an insufficient provocation for a personal encounter, is not the measure of the 'disposition' of 'the ordinary men in the calling.' " *Jones* v. *Lykes Bros. Steamship Co., supra,* at 817.

The warranty of seaworthiness does not mean that the ship can weather all storms. It merely means that "the vessel is reasonably fit to carry the cargo." *The Silvia,* 171 U. S. 462, 464; *The Southwark,* 191 U. S. 1, 9. If it is not, the owner is liable, irrespective of any fault on his part. *The Osceola, supra; Seas Shipping Co.* v. *Sieracki, supra.*

We see no reason to draw a line between the ship and the gear on the one hand and the ship's personnel on the other.* A seaman with a proclivity for assaulting people

---

*Situations involving breach of warranty of seaworthiness by reason of the disposition of a crew member have been presented in several recent decisions. Recovery was allowed in *Thompson* v. *Coastal Oil Co.,* 119 F. Supp. 838 (D. C. N. J.), rev'd on other grounds, 221 F. 2d 559. The court followed the *Keen* case in holding that a crewman who tried to murder one of his fellows with a meat cleaver was not equal in disposition to those of his calling.

In *Stankiewicz* v. *United Fruit Corp.,* 123 F. Supp. 714 (S. D. N. Y.), the court directed a verdict for defendant on a cause of

may, indeed, be a more deadly risk than a rope with a weak strand or a hull with a latent defect. The problem, as with many aspects of the law, is one of degree. Was the assault within the usual and customary standards of the calling? Or is it a case of a seaman with a wicked disposition, a propensity to evil conduct, a savage and vicious nature? If it is the former, it is one of the risks of the sea that every crew takes. If the seaman has a savage and vicious nature, then the ship becomes a perilous place. A vessel bursting at the seams might well be a safer place than one with a homicidal maniac as a crew member.

We do not intimate that Gonzales is a maniac nor that that extreme need be reached before liability for unseaworthiness arises. We do think that there was sufficient evidence to justify the District Court in holding that Gonzales had crossed the line, that he had such savage disposition as to endanger the others who worked on the ship. We think the District Court was justified in concluding that Gonzales was not equal in disposition to the ordinary men of that calling and that the crew with Gonzales as a member was not competent to meet the contingencies of the voyage. We conclude that there was evidence to support the cause of action for breach of the warranty of seaworthiness. Therefore we do not reach the question of negligence.

*Reversed.*

Mr. Justice Reed concurs in the result on the ground of the negligence of the ship's officers.

---

action for breach of warranty of seaworthiness, on the ground that there was no evidence that the assailant was not equal in disposition to men of his calling. As noted, the same result followed in the *Jones* case, *supra*, where the court held the test of unseaworthiness had not been met where a crewman assaulted one of his fellows following an earlier argument. And see *Kelcey* v. *Tankers Co.*, 217 F. 2d 541.