Fitzroy GERALD, Plaintiff-Appellant,

v.

UNITED STATES LINES COMPANY,
Defendant and Third-Party Plain-
tiff-Appellee-Appellant,

v.

Jose R. VEGA, Third-Party Defendant-
Appellee.

No. 58, Docket 30083.

United States Court of Appeals
Second Circuit.

Argued Oct. 5, 1966.

Decided Nov. 3, 1966.

Max Cohen, New York City, N. Y.
(Benjamin B. Sterling, New York City,
on the brief), for appellant.

Joseph M. Cunningham, New York
City (Kirlin, Campbell & Keating, Rob-
ert C. Mirone, New York City, of counsel,
on the brief), for defendant and third-
party plaintiff-appellee-appellant, United
States Lines Co.

Thomas E. P. McElligott, New York
City (Fields, Rosen, McElligott & Aus-
lander, New York City, on the brief), for
third-party defendant-appellee, Vega.

Before SMITH, HAYS and FEIN-
BERG, Circuit Judges.

HAYS, Circuit Judge:

Plaintiff Gerald, a wiper in the em-
ploy of the defendant United States Lines
Company, commenced this action to re-
cover for damages for injuries sustained
in a fight with Vega, a fellow seaman.
The complaint alleged three causes of ac-
tion, one predicated on the Jones Act, 46
U.S.C. § 688, one based on defendant's
warranty of seaworthiness, and the third
seeking maintenance and cure. The last
claim was submitted to the trial court
for decision and that court's award is
not challenged here. The United States
Lines Company brought in Vega as third
party defendant. Plaintiff appeals from
a judgment based on a directed verdict
dismissing his negligence claim under the
Jones Act and a jury verdict for the de-
fendant' on his claim of unseaworthiness.
We reverse the judgment in so far as it
rejected the plaintiff's Jones Act claim
without submitting it to the jury and re-

mand the case for a new trial on the issue of negligence.

Both Gerald and Vega were wipers aboard defendant's vessel, the S.S. American Manufacturer. They shared a forecastle with a third man, Sanchez. There had been no altercations between Gerald and Vega before the day of the fight in which Gerald was injured, and there is no evidence that either had previously engaged in violent conduct.

Gerald testified that he awoke at 8:00 A.M. on October 28, 1960 and found Vega and Sanchez drinking gin. He did not see Vega at work that day but did see Vega drinking in their cabin at noon and after 5:00 P.M. when Gerald finished his work. Vega dressed and went ashore at 5:30 or 5:45 P.M.

There is sharply conflicting testimony concerning the events following Vega's return to the ship, at 1:00 or 2:00 A.M. on October 29th. Gerald testified that he was awakened by Vega who was drinking beer outside their room with two or three companions and that Vega made three trips into the room to get more beer, rousing Sanchez the third time. According to Gerald, Vega became belligerent when asked to close the door. Gerald, who had left his bed, tried to avoid trouble by keeping away from Vega but as the latter left the room he slashed Gerald on the face and abdomen with a pocket knife. Gerald ran out on deck pursued by his assailant whom he finally knocked out, using a piece of dunnage.

Vega's description of these events is materially different.[1] He claimed to have spent his time ashore at the movies and eating. He denied consuming any alcohol while ashore, although he had testified to the contrary at an earlier Coast Guard hearing. Returning to the ship with three or four cans of beer in a brown paper bag he saw no one at the head of the gangway and proceeded directly to his room without encountering anyone. He quietly awakened Sanchez and the two went outside their room to drink the beer.

The principal discrepancy between Vega's testimony and Gerald's concerns the question of who was the aggressor in their altercation. As Vega describes it a belligerent Gerald slapped him and then attacked him with a piece of wood; in self defense Vega used his trim trio—a small appliance having three appendages, a can opener, nail parer and knife blade—to slash his assailant and keep him at bay.

### I.

The trial court found as a matter of law that the evidence did not establish the shipowner's negligence and directed a verdict for defendant on the Jones Act count.

"The jury trial," the Supreme Court has said, "is 'part and parcel of the remedy afforded railroad workers under the Employers Liability Act,' which the Jones Act makes applicable to those acting as [plaintiff] was here." Schulz v. Pennsylvania R. R., 350 U.S. 523, 524, 76 S.Ct. 608, 609, 100 L.Ed. 668 (1956). "The jury plays a pre-eminent role in these Jones Act cases." Ferguson v. Moore-McCormack Lines, 352 U.S. 521, 523, 77 S.Ct. 457, 458, 1 L.Ed.2d 511 (1957). In the *Ferguson* case, the Court quoted the following passage from Rogers v. Missouri Pacific R. R., 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957):

> "Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought."

In the present case there was evidence from which it could be inferred that Vega had been drinking all day, both on board ship, in violation of company and Coast Guard rules, and while ashore. There was also testimony that the gangway was unguarded, an omission which exposed all persons on board to the kind of incident that in fact occurred. Rea-

---

1. Vega was not available to testify at the trial but his deposition was read to the jury.

sonable men could find that the defendant was negligent in not enforcing the ban on liquor, and in not having a guard at the head of the gangway and that plaintiff was injured as a result of these omissions. See Stankiewicz v. United Fruit Steamship Corp., 229 F.2d 580 (2d Cir. 1956). That the jury may have been thinking along these lines is shown by the two questions which it posed to the court during its deliberations on the claim of unseaworthiness: (1) "If the defendant failed to check on the bringing of the liquor aboard ship and if such act results in intoxication and in turn results in a crew member being injured, does the defendant's failure to confiscate the liquor constitute unseaworthiness?" (2) "Would it be unseaworthy if the defendant allowed a seaman to come aboard in an intoxicated manner?"

We hold it was error for the district court to direct a verdict on the issue of negligence.

## II.

Appellant contends that the court should have charged the jury that if it found Vega attacked the plaintiff with a knife then "this occurrence constituted a breach of the warranty of seaworthiness as a matter of law."

Defendant has an obligation "to provide men equal in disposition to the ordinary man of the calling." Boudoin v. Lykes Bros. S.S. Co., 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354, modified, 350 U.S. 811, 76 S.Ct. 38, 100 L.Ed. 727 (1955). However, recognizing that the ordinary seaman is likely to be less even-tempered than others, it has been held that the shipowner has violated this duty only if there is present in the crew "a seaman with a wicked disposition, a propensity to evil conduct, a savage and vicious nature." Boudoin v. Lykes Bros. S.S. Co., supra, 348 U.S. at 340, 75 S.Ct. at 385; see Jones v. Lykes Bros. S.S. Co., 204 F.2d 815, 817 (2d Cir.), cert. denied, 346 U.S. 857, 74 S.Ct. 72, 98 L.Ed. 370 (1953).

In no case has this court held that an assault with a weapon establishes as a matter of law that the attacker is not equal in disposition to other men in the calling. Such evidence, even when coupled with proof of prior vicious conduct, creates a question of fact concerning the assailant's disposition for the jury to resolve. See Horton v. Moore-McCormack Lines, Inc., 326 F.2d 104 (2d Cir. 1964); Walters v. Moore-McCormack Lines, Inc., 309 F.2d 191, 193–194 (2d Cir. 1962) and cases there cited; Stankiewicz v. United Fruit Steamship Corp., supra.

There was therefore no error in the court's refusal to charge as requested by plaintiff and the jury's verdict on the claim of unseaworthiness must be affirmed.

Our disposition of the unseaworthiness claim renders moot the defendant's novel contention that it would be entitled to counsel fees from Vega if the vessel were adjudged unseaworthy because of his presence in the crew.

Reversed and remanded for a new trial on the issue of negligence.