
**Roland J. DUGAS, Appellant,**

v.

**NIPPON YUSEN KAISHA, Appellee.**

No. 23495.

United States Court of Appeals
Fifth Circuit.

May 9, 1967.

Rehearing Denied July 18, 1967.

Jerry H. Bankston, of Maughan & Bankston, Baton Rouge, La., for appellant.

Tom F. Phillips, of Taylor, Porter, Brooks, Fuller & Phillips, John I. Moore, Baton Rouge, La., for appellee

Before RIVES and WISDOM, Circuit Judges, and CONNALLY, District Judge.

RIVES, Circuit Judge.

This action was by a longshoreman against a shipowner to recover for personal injuries allegedly caused by an unseaworthy condition of the ship. The district court directed a verdict for the defendant, and from the ensuing judgment this appeal is prosecuted. There is no substantial dispute about the facts.

The longshoreman Dugas was employed by Rogers Terminal and Shipping Corporation at the Port of Greater Baton Rouge, Louisiana. The Japanese Steamship Company, generally called the NYK Line, was the owner of the "Asama Maru" which was to be loaded with a cargo of metal drums or barrels containing tetraethyl lead. The accident occurred at about 1 o'clock P.M. on October 25, 1963. Before loading the cargo, dunnage boards were to be loaded and arranged on the decks to provide a resting place for the drums or barrels. The ship was riding low in the water so that there was a distance of some 30 to 45 feet from the floor of the dock to the deck of the ship. The dunnage boards were to be lowered from the dock onto the ship's deck by means of a gantry crane located on the dock.

The dunnage boards arrived at the dock in large bundles of rough lumber. The bundles are usually kept together by two metal bands or straps encircling the lumber. The boards are of varying dimensions.

Dugas and four other longshoremen went aboard the ship and stood next to the inshore rail to await the arrival of the dunnage boards. Four longshoremen went to the offshore side of the ship.

On the dock a longshoreman moved a load of dunnage to the edge of the dock.

Another longshoreman on the dock acting as "hook up" man used a metal sling which he passed under and around the load of dunnage and hooked the end of the sling called the cat-eye onto a large hook at the bottom of a line attached to the gantry crane. The crane then lowered without incident the first load of dunnage to the offshore side of the ship. A second load of dunnage was moved into position at the extreme river edge of the dock for attachment to the sling. This second load of dunnage was not a full load and did not have a metal band or strip around it. Boards were missing from this second bundle which had been removed previously in work on other cranes. There is no dispute that under Section 9.81 of the Safety and Health Regulations for Longshoring, issued by the Secretary of Labor on April 25, 1960 and published in the Federal Register, it was required that double slings be used on unstrapped dunnage.[1] There should have been a double sling to even up and balance the load and grasp the boards at both ends of the load. Nonetheless, the hook-up man placed a single sling in the middle of the load as best he could and, having completed the hook-up, walked away and the crane started to lift the load. An interval of some 10 to 15 seconds elapsed between the time the single sling encircling the load was hooked to the hook on the gantry line and the time the crane started raising the load.

When the load was raised it tilted toward the ship and 4 to 6 short boards slid out. The men on the deck of the ship could not see the dunnage on the dock nor could the men on the dock see the men on the ship. The longshoremen on the dock yelled "heads up" and the longshoremen on the inshore side of the ship began running in various directions. One of the boards, some 8 feet long, ½ foot wide and 1 inch thick, struck Dugas in the back, painfully injuring and disabling him.

The district court directed a verdict for the defendant on two theories: (1) that the shore-based gantry crane, sling and load of dunnage were not appliances appurtenant to the ship and any accident resulting from their use would not evidence unseaworthiness of a ship; and (2) that the injuries sustained by Dugas did not result from any unseaworthy condition of the vessel or its appurtenances but from negligence on the part of his fellow longshoremen.

The appellee concedes that since the trial the first ground has been decided by this Circuit adversely to the appellee in Deffes v. Federal Barge Lines, Inc., 1966, 361 F.2d 422, but asks the Court to reappraise that ruling. All of the authorities and reasoning cited by the appellee were considered by this Court in *Deffes* and we adhere to that decision.

The district court was more positive in its opinion of the soundness of the second ground upon which it directed a verdict for the defendant. It seems appropriate to quote a part of the district court's statement of its reasoning to counsel:

> "* * * I am not ready to say that as a fixed settled principle of law that this gear must be actually affixed to the ship; but I am ready to say that in my opinion, in order to find unseaworthiness you must find that the gear itself was unfit for the purposes for which it was intended—not that it's unsafe, because much gear on a vessel is unsafe, and a vessel owner is not obligated to furnish an accident-free ship or accident-free equipment or gear. In this case, every witness testified there was nothing wrong with the crane. I don't think that is part of the ship's gear, but going all the way and assuming that it is, plaintiff's counsel concedes there was nothing wrong with the crane, nothing wrong with the fall of the crane; there was nothing wrong with the hook on the end of the fall of the crane; there was

---

1. With an exception not here applicable "* * * except when, due to the size

of hatch or deep tank openings, it is impracticable to use them."

nothing wrong with the sling that was used, and as a matter of fact, there is not one witness who has testified who has been willing to say that there weren't other slings available to be used had they wanted to use them. No one has testified there was not more than one sling available; they didn't testify there was, but they said they couldn't answer the question, whether there were other slings available; so it hasn't been shown they were not furnished with sufficient slings, but what has been shown is that they were furnished with seaworthy dunnage—because no one has said anything was wrong with the dunnage, the testimony shows up until now, that you can and is not unusual to place bundles of dunnage that are not strapped, in other words partial bundles of dunnage—there is nothing unusual about bringing those aboard a vessel by use of a crane. The testimony is clear on that. So there is no evidence of anything wrong with the dunnage; no evidence of anything wrong with the sling. The only thing wrong is that some longshoreman was negligent in the way the dunnage was —the way the sling was placed on the dunnage, and the negligence continued right down to the moment of the accident, because of the fact that nobody waved, nobody flagged the crane operator; nobody told anyone to get out of the way, they had no way to know. It was purely and simply an operating accident, it seems to me from start to finish.

"Consequently, I believe there is absolutely no material issue of fact whatsoever involved in the case upon which reasonable men could disagree, and therefore, I am forced to deny the motion of the plaintiff for a directed verdict and to grant the motion of the defendant for a directed verdict at end close of plaintiff's case."

The appellant relies on the leading case of Grillea v. United States, 2 Cir. 1956, 232 F.2d 919, and on a number of other cases. In *Grillea* the wrong hatch

cover was placed over a pad-eye a short time before a longshoreman stepped on it and it gave way beneath him. Judge Learned Hand, with Judge Frank concurring and Judge Swan dissenting, held this to constitute a condition of unseaworthiness. In a long line of subsequent cases reviewed in Radovich v. Cunard SS Company, 2 Cir. 1966, 364 F.2d 149, the Second Circuit has found extreme difficulty in drawing the line between operational negligence and an unseaworthy condition. *Radovich* points out, footnote 4, 364 F.2d 151, that the Third Circuit and the Fourth Circuit have refused to accept any distinction between operational negligence and unseaworthiness. See Ferrante v. Swedish American Lines, 3 Cir. 1964, 331 F.2d 571; Scott v. Isbrandtsen Co., 4 Cir. 1964, 327 F.2d 113. Ferrante v. Swedish American Lines, supra, is probably the closest case in support of the appellant's position. It was there held that the stevedore's negligent method of assembling piles of plywood boards side-by-side to make a sling load made the ship unseaworthy, even though the ropes used were adequate. The ship was held liable for resulting injuries to longshoremen.

This Fifth Circuit, however, is committed to a doctrine " * * * that a shipowner is not liable for the negligence of longshoremen acting as servants or employees of an independent stevedoring contractor, unless such negligence creates an unseaworthy condition." Neal v. Lykes Bros. Steamship Co., 5 Cir. 1962, 306 F.2d 313, 315. See also, McQuiston v. Freighters and Tankers Steamship Co., 5 Cir. 1964, 327 F.2d 746. The appellant emphasizes the concluding clause, "unless such negligence creates an unseaworthy condition," and insists that the negligence of the hook-up man had created an unseaworthy condition at least during the 10 to 15 seconds which elapsed between the time the single sling encircling the load was hooked to the hook on the gantry line and the time the crane started raising the load. We doubt whether that is true. So long

as the load stayed at rest on the dock there was no unsafe condition. It was only after the crane started raising the load that it became dangerous and then there was only a momentary interval of time before the dunnage board fell and struck Dugas in the back.

Assuming, however, that an unsafe condition had been created for the 10 to 15 seconds, we think the teaching of Morales v. City of Galveston, 1962, 370 U.S. 165, 82 S.Ct. 1226, 8 L.Ed.2d 412, is fatal to appellant's contention. The first decision of this Court in that case, reported in 275 F.2d 191, had been vacated and the case remanded to this Court for consideration in the light of Mitchell v. Trawler Racer, Inc., 1960, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941. See Morales v. City of Galveston, 1960, 364 U.S. 295, 81 S.Ct. 107, 5 L.Ed.2d 84. Upon remand, Judge Hutcheson with Judge Jones concurring was of the view that *Mitchell* was inapplicable to the facts of the *Morales* case, and again affirmed the district court's judgment, 291 F.2d 97. The writer dissented on the ground that "the introduction of the fumigated grain rendered the ship temporarily unseaworthy, that is, long enough to injure the libelants," and took a position similar to that now advocated by appellant, saying:

"In the present case the district court found:

'A last "shot" of grain was called for, and was released into the bin. This quantity of grain completely covered the hatch opening (which was the only means of entrance and exit for the longshoremen, and was the only source of ventilation); hence, the longshoremen were working for the moment in an area completely enclosed and without access to outside air.'

"It is clear that temporarily the bin where the libelants were working was not a reasonably safe place in which to work."

291 F.2d at 99. The Supreme Court again granted certiorari, but affirmed the judgment, holding that "[w]hat caused injury in the present case, however, was not the ship, its appurtenances, or its crew, but the isolated and completely unforeseeable introduction of a noxious agent from without." 370 U.S. 171, 82 S.Ct. 1230. Mr. Justice Douglas, with whom The Chief Justice and Mr. Justice Black concurred, dissented, but even they in dissenting conceded that, "If this were an isolated instance of fumigated grain releasing noxious gases, no claim of unseaworthiness could be maintained." 370 U.S. 171, 82 S.Ct. 1230. Mr. Justice Douglas further stated:

"But I agree with Judge Rives of the Court of Appeals that the vessel and her appurtenances were not 'reasonably fit for their intended use' (291 F.2d 97, 99), where up to 10% of the grain loaded from this elevator was fumigated and where the owners had knowledge of like accidents." 370 U.S. 172, 82 S.Ct. 1230.

*Morales* thus emphasizes the element of "intended use" or foreseeability as to the "reasonable fitness" part of the concept of unseaworthiness. That is true also of Mitchell v. Trawler Racer, Inc., supra, where the Court said:

"The duty is absolute, but it is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service. Boudoin v. Lykes Bros. S.S. Co., 348 U.S. 336 [75 S.Ct. 382, 99 L.Ed. 354]." 362 U.S. at 550, 80 S.Ct. at 933.

■ There was no evidence in the present case that the shipowner could anticipate an intended use of the single sling without a second sling in violation of the Safety and Health Regulations of the United States Department of Labor, to which we have heretofore referred. The appellant himself insists that "the violation of this safety regulation caused the accident." (Appellant's Brief, p. 6.)

That violation was the negligent act of the hook-up man, a fellow longshoreman of Dugas. The accident occurred as soon as that violation created a dangerous condition. The shipowner was under no duty to guard against that "isolated and completely unforeseeable" event, nor did that event prove the vessel not to be "reasonably fit for her intended service." [2]

The judgment is therefore affirmed.

---

2. Since the writing of this opinion two other cases have been decided by this Court which bear upon the difference between operational negligence and unseaworthiness and which seem to us to be consistent with this opinion. Antoine v. Lake Charles Stevedores, Inc. et al., 5 Cir. 1967, 376 F.2d 443, and Robichaux v. Kerr McGee Oil Industries, Inc., 5 Cir. 1967, 376 F.2d 447.