John **MASCOLA**, Plaintiff-Appellant,

v.

**PACIFIC COAST TRANSPORT COMPANY**, Defendant-Appellee.

No. 375, Docket 33058.

United States Court of Appeals Second Circuit.

Argued Dec. 17, 1969.

Decided Jan. 23, 1970.

George J. Duffy, Hoboken, N. J. (Baker, Garber, Chazen & Duffy, Hoboken, N. J., on the brief), for appellant.

James F. Hart, New York City (Boal, Doti, Fitzpatrick & Hart and Louis G. Juliano, New York City, on the brief), for appellee.

Before FRIENDLY, SMITH and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

John Mascola, an ordinary seaman aboard the Pacific Coast Transport Company's tanker SS *Point Loma*, sustained injuries when he slipped and fell on the vessel's boat deck during his watch at about 2:15 a. m. on November 12, 1963. He brought suit asserting his employer's liability based upon both negligence under the Jones Act, 46 U.S.C. § 688, and unseaworthiness of the vessel.

The case was tried before a jury. At the close of all the evidence, the district court denied Mascola's motion for a directed verdict but granted a like motion by the employer. On this appeal Mascola contends that either his case presented sufficient evidence to reach the jury or that the evidence required a directed verdict in his favor. We reverse the trial court's verdict and remand for a jury determination of liability.

The appellant testified that when he was standing the mid-watch, from midnight to 4 a. m., the second mate, who was in the wheelhouse and in charge of the watch, ordered him to get fresh coffee for the next watch. Mascola claims that the command which sent him out onto the deck on this errand,[1] despite his objections, was an improvident order under the circumstances.

The *Point Loma*, a T-2 tanker en route from Port Arthur, Texas, to St. Petersburg, Florida, was encountering a northerly wind measured at Force 6 on the Beaufort Scale (25–31 miles per hour) at the time of this incident. Its log entry for 2 a. m. recorded that the temperature was between 72 and 63 degrees, the weather was mostly clear, and that the vessel was encountering "strong, choppy, northerly seas." Mascola testified that the "strong" seas included waves of 15–20 feet, reaching the deck on which the accident occurred. He also noted that the loaded tanker was listing and had been equipped with emergency lifelines because it was taking on seas during what he described as the "rough" weather.

The errand required the appellant to make his way from the vessel's forward house down to a catwalk above the main deck, along this walkway to the after house, and then up to the second or boat deck level and the entrance to the after house, which the district court found was about 20 feet above water level. Throughout this trip, it was necessary for Mascola to maintain his hold upon the ship's railings while carrying both the coffee box and a flashlight. He accomplished this by holding to the railing at all times with one hand and carrying both the cumbersome box, which he described as a "monstrous thing" measuring eighteen inches square by eight

1. Mascola, who was the only witness at trial, testified that the officer gave him a direct order, and that the mate did not suggest that he might comply with it by obtaining coffee from the officers' quarters nearby. While the trial court expressed doubt that the evidence established beyond question that an explicit order had been given, it necessarily assumed the credibility of the appellant's testimony in regard to both these points when passing upon the employer's motion for a directed verdict.

inches deep and weighing about eight pounds, and the flashlight in the other.

Mascola reached the after house without incident and secured fresh coffee; but as he began the return trip with his burden, preceded by another seaman whom he had asked to light his way, he fell on the boat deck, in the lee of the after house. He testified:

> "Well, as I was proceeding to go forward on the boat deck, Charlie Estene, my watch partner was giving me the light and at that precise moment the ship took on a heavy swell or seas, whatever you want to call it, but it took on a lot of water. At that particular time there was no light for my footing to see where I was going. The deck was wet and I lost my footing and I slipped and the coffee box landed under my back and I fell on top of it."

The district court directed a verdict of non-liability because it found that the seas were "not that excessive" and that any water on the deck was "not an unreasonable condition to find aboard a vessel of this kind or indeed practically any kind that I can think of."

 While a wet deck in itself does not furnish a basis for finding a ship unseaworthy, the order in question required an errand under circumstances which also included the darkness of the midwatch, a breeze which was not insignificant, the necessity of carrying the loaded coffee box while depending upon a flashlight not directed where the appellant needed it most, and a possible alternative course of action which might not have been disclosed to Mascola. There was evidence from which reasonable men might find the order improvident, and an evaluation of possible employer negligence in giving an order under circumstances involving such a set of interlocking variables is precisely the task of a jury in cases such as this. See Gerald v. United States Lines Co., 368 F.2d 343, 22 A.L.R.3d 619 (2 Cir. 1966); cf. Waldron v. Moore-McCormack Lines, Inc., 386 U.S. 724, 87 S.Ct. 1410, 18 L.Ed.

2d 482 (1967). As the Supreme Court has often asserted, the jury "plays a pre-eminent role in these Jones Act cases." Ferguson v. Moore-McCormack Lines, Inc., 352 U.S. 521, 523, 77 S.Ct. 457, 458, 1 L.Ed.2d 511 (1957).

On the other hand, the evidence was certainly not so conclusive of negligence as to entitle Mascola to a directed verdict in his favor.

Reversed and remanded.