Argued September 10, affirmed September 30, 1970, petition
for writ of certiorari denied by United States Supreme
Court March 16, 1971

## HOWARD, *Appellant, v.* AMERICAN MAIL LINE, LTD., *Respondent.*

475 P2d 65

*Ben T. Gray*, Portland, argued the cause and filed a brief for appellant.

*William F. White*, Portland, argued the cause for respondent. With him on the brief were White, Sutherland and Gilbertson, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN,* TONGUE, HOWELL and MENGLER, Justices.

TONGUE, J.

This is an action for personal injuries sustained by a merchant seaman while employed as a ship's carpenter on the OREGON MAIL. The complaint, in two counts, alleges both that the vessel was unseaworthy and also, under the Jones Act, that defendant was negligent. Both counts allege that the deck load was stacked too close to a doorway and that no passageway was provided. Plaintiff appeals from a directed verdict and judgment for defendant.

Plaintiff's duties included the making of soundings for water in the bilge at various places on the vessel. One of the sounding wells for this purpose was located back of a ladder near a door from the mast house.

The vessel had a deck load of lumber, which at that point was stacked from eight to ten feet high alongside the mast house, extending vertically from the deck to the top of a three foot "overhang" on the mast house and tight against the steel ladder. A "cat walk" extended fore and aft along the top of the deck load.

In order to provide access to the sounding well a "break" or "gap" was left in the tiers of lumber in front of the doorway. One tier of packaged lumber extended into the bottom of this "gap," leaving a flat surface or "platform" from four to five feet long, from

---

* Holman, J., did not participate in this decision.

eighteen to twenty inches wide and approximately two and one-half feet high.

Thus, in order to get to the sounding well, it was necessary for plaintiff, after using the "cat walk," to "slide" from the top of the deck load of lumber, a distance of six or eight feet, to the top of that bottom tier of packaged lumber. From there it was necessary for him to step or "slide" down a distance of approximately two and one-half feet to the main deck near the sounding well. Using that route, plaintiff took soundings at that location once each day.

On the day of the accident, several days after leaving port, the door to the mast house was open, as it had been on some previous occasions, leaving a "threshhold," "sill," or "waterguard" from sixteen to twenty inches high and between eight and ten inches wide. After "sliding" down from the top of the deck load to the bottom tier of lumber (which he concedes "didn't have anything to do with this injury"), and instead of then "sliding" or "stepping down" to the main deck, plaintiff "stepped over" to the top of the "threshhold," "sill," or "waterguard." Plaintiff did so without holding on to the top of the open door. His shoe, which had little or no heel (a lift or "spring" heel) then slipped and he struck his head on the top of the doorway.

Plaintiff testified that he had previously spoken to the mate about placing a "little ladder or something for this area" but that the mate said "we didn't need it."

Defendant offered testimony, which was not denied by plaintiff, that the deck load of lumber was stowed in the customary manner, including the "break" or "gap" left for the access to the sounding well, with

its lower "tier" of packaged lumber, to provide what was considered to be a "reasonable step" to the deck. A survey was also made by the National Cargo Bureau at the time the vessel was loaded verifying that the cargo had been stowed in a seaworthy manner.

A more specific description of the area in which the accident occurred, including the means of access to that area, is difficult to reconstruct from the written record, for the reason that much of the descriptive testimony by witnesses for both parties was in terms of pointing to "here" or "there" on very rough sketches.

Plaintiff contends on this appeal that the sufficiency of the evidence must be considered "in the special light" of the Jones Act and the doctrine of unseaworthiness, under which the "jury's power" is "significantly broader than in ordinary common law negligence," including situations in which "failure to provide proper ingress or egress * * * has played some part in producing the injury."

On the contrary, defendant contends that a shipowner is not "obligated to furnish an accident-free ship," but that his duty is no more than "a duty to furnish a vessel and appurtenances reasonably fit for their intended use" (quoting from *Bourdoin v. Lykes Bros. S.S. Co.*, 348 US 336, 75 S Ct 382, 99 L ed 354 (1955)); that what is "reasonable" means what is ordinary or usual under the circumstances; that plaintiff did not deny testimony that this deck load of lumber was stowed in the customary and usual manner; that plaintiff failed to sustain his burden to prove that it was unreasonable, under the facts of this case, to require an able-bodied seaman to step, "slide" or otherwise climb down from a two and one-half foot

platform to the deck of a ship, and that plaintiff has cited no cases in which recovery has been allowed under similar facts.[1]

This court does not necessarily agree with all of the foregoing course of reasoning by defendant. We also recognize that our decisions in such cases are controlled by the "broad doctrines" established by the Supreme Court of the United States. Under the facts of this particular case, however, and under the record as made by the parties in this case, we find no basis for holding that the trial court erred in finding that plaintiff failed to offer any substantial evidence sufficient to establish that this vessel was unseaworthy or that defendant was negligent in either of the respects alleged in his complaint, that is, in "failing to provide a passageway" or in "stacking said deck load too close to the doorway."

Affirmed.

---

[1] The case cited by plaintiff closest in point is Eaton v. Long Island Railroad Co., 398 F2d 738 (2d Cir 1968), an F.E.L.A. case in which a railroad worker complained that he had not been furnished with a ladder or steps to climb out of a grease pit 38 inches deep. Although affirming a judgment for plaintiff and the denial of a directed verdict, the court pointed out that there was evidence that in other railroad repair yards steps were provided to get in and out of such pits. On the contrary, the same court, in Richter v. Mathiasen's Tanker Industries, Inc., 297 F2d 494 (2d Cir 1961), affirmed the dismissal of a suit in admiralty by a seaman for personal injuries in which the seaman fell and was injured in stepping on a bottom shelf to reach an item on a top shelf in taking inventory and complained that a ladder should have been provided for him to reach the top shelf. In that case, however, as in this case, no evidence was offered to show such a practice on any other vessel.