**Elma SMITH, Individually and as Administratrix of the Estate of George E. Smith, Deceased, Plaintiff-Appellant,**

v.

**AMERICAN MAIL LINE, LTD., a corporation, Defendant-Appellee.**

**No. 73–2943.**

United States Court of Appeals, Ninth Circuit.

Nov. 20, 1975.

Harold F. Vhugen (argued), Levinson, Friedman, Vhugen, Duggan & Bland, Seattle, Wash., for plaintiff-appellant.

Robert V. Holland (argued), Bogle, Gates, Dobrin, Wakefield & Long, Seattle, Wash., for defendant-appellee.

## OPINION

Before MERRILL, KOELSCH and BROWNING, Circuit Judges.

MERRILL, Circuit Judge:

On the S.S. American Mail, a freighter carrying twelve passengers with a crew of forty-four, in mid-ocean, a steward was found dead one morning. He had been brutally murdered while apparently listening, through earphones, to his tape recorder. Cause of death was a blow from a fire axe which almost decapitated him. No criminal charges ever were filed. No arrest ever was made. This action for wrongful death was brought by the steward's widow. The question presented is whether the presence of this killer aboard ship served to render the ship unseaworthy.

The district court held for the ship owner. It found that the attacker had a vicious and savage character such as could render the ship unseaworthy had he been a member of the crew. *Boudoin v. Lykes Bros. Steamship Co., Inc.,* 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354 (1955). It also found, however, that the identity of the murderer had not been proved, and this finding, on the record, cannot be held to be clearly erroneous. We hold that failure to establish that the attack was by a crew member, rather than by a passenger, precludes recovery on the ground of unseaworthiness.

In *Boudoin, supra,* at 340, 75 S.Ct. at 385, the Court stated:

A vessel bursting at the seams might well be a safer place than one with a homicidal maniac as a crew member. We may concede that the presence of a homicidally inclined passenger can create a condition as dangerous for those aboard ship as the presence of a homicidally inclined crew member. We recognize that "unseaworthiness is a *condition,* and how that condition came into being—whether by negligence or otherwise—is quite irrelevant to the owner's liability for personal injuries resulting from it." *Usner v. Luckenbach Overseas Corp.,* 400 U.S. 494, 498, 91 S.Ct. 514, 517, 27 L.Ed.2d 562 (1971). But not every dangerous condition to which a ship is exposed is such as to render the vessel unseaworthy. The doctrine is founded on a ship owner's implied warranty of fitness and the condition must be such a one as to render unfit that which should be fit. The fact that the ship itself has become unsafe is not enough, in and of itself, to render it unfit for its purposes in the sense of unseaworthiness. The warranty of the ship owner is not one of unconditional safety, but of fitness for duty of that which functions to provide the service tendered by the ship in the carriage of goods or people.

In *Gutierrez v. Waterman S. S. Corp.,* 373 U.S. 206, 213, 83 S.Ct. 1185, 1190, 10 L.Ed.2d 297 (1963), the "proper application of the seaworthiness doctrine" was declared to be "in essence that things about a ship, whether the hull, the decks, the machinery, the tools furnished, the stowage, or the cargo containers, must be reasonably fit for the purpose for which they are to be used." The members of the crew are "things about a ship" that must be reasonably fit. As the Court in *Boudoin, supra,* 348 U.S. at 339, 75 S.Ct. at 385, stated:

We see no reason to draw a line between the ship and the gear on the one hand and the ship's personnel on the other.

But a recognized line is drawn between a ship, its gear, and personnel on the one hand—that which is engaged in the providing of ship's service—and that which is receiving the service of carriage on the other—that to which service is being provided. The warranty of fitness does extend to the manner in which cargo is stowed, *Belships Co. v. Bilbao,* 390 F.2d 642 (9th Cir. 1968); *Splosna-Provba v. Garcia,* 390 F.2d 41 (9th Cir. 1968). It extends as well to the containers in which cargo has been shipped. *Gutierrez v. Waterman S. S. Co., supra; see Blassingill v. Waterman Steamship Corp.,* 336 F.2d 367, 370–71 (9th Cir. 1964). While containers are generally provided by the shipper rather than by the ship owner, still they are designed to perform a function essential to the carriage of goods and accordingly are appropriate subjects of a warranty of fitness for the function for which they are designed. The warranty of fitness, however, does not extend to the cargo itself—the recipient of ship's service. *Morales v. City of Galveston,* 370 U.S. 165, 82 S.Ct. 1226, 8 L.Ed.2d 412 (1962); *Bell v. Nihonkai Kisen, K. K., Tokyo,* 204 F.Supp. 230 (D.Or.1962); *see Noble v. Lehigh Valley Railroad Co.,* 388 F.2d 532, 533 (2nd Cir. 1968); *Carabellese v. Naviera Aznar, S. A.,* 285 F.2d 355, 359–60 (2nd Cir. 1960) *cert. denied* 365 U.S. 872, 81 S.Ct. 907, 5 L.Ed.2d 862 (1961). In Norris, The Laws of Maritime Personal Injuries, Vol. II § 298, at p. 4 (3rd ed. 1975), the author states:

But cargo per se is not considered an integral part of the ship. The interests of a ship and cargo have usually been considered as separate. While the cases which have held the ship to be unseaworthy relate to the manner in which cargo has been stowed or thereafter utilized, the inherent qualities of the cargo carried has not as yet had that effect.

In *Morales v. City of Galveston, supra,* longshoremen suffered injury from noxious fumes given off by grain that had been treated with chemical insecticides. The Court concluded, 370 U.S. at 171, 82 S.Ct. at 1230:

What caused injury in the present case * * * was not the ship, its appurte-

nances, or its crew, but the isolated and completely unforeseeable introduction of a noxious agent from without.[1]

We see no difference between the cargo and the passengers in this respect. If the S.S. American Mail was rendered unsafe by the presence of a dangerous passenger, the unsafe condition was, as much as it was in *Morales* (although, perhaps, speaking more euphemistically), due to the introduction of a "noxious agent from without." *See Friend v. Tropis Company,* 382 F.2d 633 (4th Cir. 1967), *cert. denied,* 390 U.S. 906, 88 S.Ct. 820, 19 L.Ed.2d 872 (1968).

■ *Morales* makes clear that although cargo itself does not come within the warranty of seaworthiness, it can figure in rendering the hull or ship's gear unseaworthy. The ship must be fit to carry the cargo in question and account must be taken, in the provision of gear and personnel, at least of the not uncommon characteristics of that cargo.

Mr. Justice Douglas, dissenting in *Morales,* concluded that the ship was unseaworthy. This, however, was not because of the defect in the cargo, but because of the ship's failure to provide for the contingency that cargo might be defective in this manner. It was not the presence of contaminated grain that rendered the ship unseaworthy in his view, but the inadequacy of ship's gear through failure to provide a forced ventilation system. He recognized, 370 U.S. at 172, 82 S.Ct. at 1230, that "[a] vessel without a forced ventilation system would be seaworthy if this injury were an unexpected, isolated occurrence." His disagreement was with the court's conclusion that the occurrence was unexpected and isolated.

■ If this rule were to be extended to passengers as well as to cargo, the question here would be whether failure of the ship owner to provide means of protection against the hazard presented by the presence of a dangerous passen-

ger rendered the ship unfit. We do not think that rationally this can be contended.

Affirmed.

1. We do not regard the reference to "cargo" in *Usner v. Luckenbach Overseas Corp., supra,* 400 U.S. at 500, 91 S.Ct. 514, as intending an overruling of *Morales.* The problem dealt with there was entirely different.