George MEARS, Plaintiff,

v.

AMERICAN EXPORT LINES, INC., Defendant and Third Party Plaintiff,

v.

Epifanio M. ARREQUI, Third Party Defendant.

No. 75 Civ. 5068 (KTD).

United States District Court, S. D. New York.

Sept. 21, 1978.

Tabak, Steinman & Mellusi, New York City, for plaintiff; Ralph J. Mellusi, Jack Steinman, New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, for defendant;· Stephen K. Carr, Bruce C. Beringer, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge.

Plaintiff George Mears has brought this action to recover for injuries sustained by him while he was serving as an Ordinary Seaman aboard defendant's ship, the S.S. Export Buyer. Plaintiff claims that the ship was unseaworthy by virtue of the presence on board of a man "unequal in disposition and temperament to other men in the calling." Plaintiff's Proposed Conclusions of Law. Specifically, he asserts that another seaman, Steward Utility Epifanio Arrequi, the third party defendant in this action, assaulted him without provocation and inflicted such serious wounds as to demonstrate Arrequi's "savage and vicious nature," ¶ 22 Plaintiff's Proposed Finding of Fact, and render the vessel unseaworthy.

A trial was held before me after which the parties were given leave to submit post-trial memoranda. The following shall constitute my findings of fact and conclusions of law.

On September 28, 1975, the S.S. Export Buyer, recently returned from a voyage to India, was docked at Bush Terminal in Brooklyn, New York. Plaintiff left the ship at approximately 4:00 p. m. and walked to a local restaurant where he ate dinner and drank several draft beers. He returned to the ship several hours later where he consumed more beer.

Sometime later that evening, plaintiff went to the room of Seaman Arrequi to collect ten rupees owed to him by another seaman, Rufus Johnson. Johnson had shared a room with Arrequi on the voyage to India but had left the vessel in Calcutta due to illness. He arrived at the dock in Brooklyn to collect his personal belongings stored in a locker in the room he had formerly shared with Arrequi. Neither man had a key to the locker and attempts were underway to force the lock when plaintiff arrived.

Plaintiff suggested that Johnson use a crowbar to break open the lock. Arrequi apparently did not want the lock broken and ordered plaintiff from the room. Plaintiff protested that the room was Johnson's as well as Arrequi's and began to curse at Arrequi. Arrequi pushed plaintiff toward the door, but plaintiff stood in the doorway and continued to verbally abuse Arrequi. Arrequi then ran to his desk from which he pulled a paring knife with a blade approximately 2½ to 3 inches long. He crossed the room and stabbed plaintiff in the forehead, chin and abdomen, inflicting lacerations that required treatment in the emergency room of Lutheran Medical Center.

The most serious wounds suffered were to the chin and temple, each requiring suturing. All the wounds healed well and five days after his hospital admission, plaintiff was discharged. Thereafter he was found "not fit for duty" and remained so for a total of forty-three days. Plaintiff was treated at the United States Public Health Service Hospital in Norfolk, Virginia for approximately one month. Since the incident, plaintiff has experienced continuing discomfort and headaches.

Defendant presented a number of witnesses who testified to Arrequi's good character. According to the ship's Master, Arrequi was a hard-working, peaceful crew member who achieved the highest possible rating in conduct and ability. Three other live witnesses confirmed the Master's opinion of Arrequi as did the deposition testimony of a fourth crew member, now deceased. Even plaintiff admitted that prior to the night of the stabbing he had encountered no problems with his assailant. Moreover, Arrequi's Coast Guard record was unblemished during his more than thirty years at sea.

■ It is beyond question that a shipowner has a duty to provide a seaworthy vessel manned by "men equal in disposition to the ordinary man of the calling." *Boudoin v. Lykes Brothers S.S. Co., Inc.,* 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354, *modified,* 350 U.S. 811, 76 S.Ct. 38, 100 L.Ed. 727 (1955). However, as plaintiff concedes, this Circuit has never held that assault with a weapon, without more, establishes a vicious disposition as a matter of law. *Gerald v. United States Lines Co.,* 368 F.2d 343, 345 (2d Cir. 1975).

■ In the case at bar, the peaceful nature of plaintiff's assailant prior to the stabbing has been well established. Plaintiff, in essence, asks me to ignore this evidence and to find that Arrequi, in fact, had a vicious temperament. He points both to the nature of the attack, which he asserts was unprovoked, and to the fact that Arrequi often carried a paring knife, as evidence of Arrequi's vicious tendencies.

I find that plaintiff has failed to prove that Arrequi was a man not equal in temperament to ordinary men in the calling. In the first place, the attack on plaintiff was not unprovoked. Plaintiff went to Arrequi's room having imbibed a quantity of alcohol and in a boisterous state. Arrequi was known to be a quiet, religious man. When asked to leave the room, plaintiff stood in the doorway and hurled abuses at Arrequi. Arrequi, apparently pushed to a point beyond self-control, ran across the

room, grabbed a knife and repeatedly stabbed plaintiff. The multiple incisions in different parts of plaintiff's body indicate the spontaneous nature of the attack. This was not a premeditated assault such as the meat cleaver attack that gave rise to liability in *Keen v. Overseas Tankership Corp.,* 194 F.2d 515 (2d Cir.), *cert. denied,* 343 U.S. 966, 72 S.Ct. 1061, 96 L.Ed. 1363 (1952).

Furthermore, the record is devoid of evidence that Arrequi had "a vicious, pugnacious, or dangerous disposition." *Kable v. United States,* 169 F.2d 90 (2d Cir. 1948). Rather the contrary was proved. The mere fact that he may have been seen carrying a paring knife, or that he kept such a knife in his room, does not contradict this evidence nor does it establish his vicious nature. Arrequi was a utility steward and this knife was used by him to cut string on linen. By keeping the tools of his trade handy, a seaman does not necessarily become a danger to the ship and crew. Moreover, the cumulative evidence of Arrequi's good nature, which I find completely credible, belies any suggestion by plaintiff that Arrequi's presence on board the S.S. Export Buyer rendered the ship unseaworthy. Accordingly, judgment will enter for defendant.

I must now determine whether plaintiff is entitled to maintenance and cure. This is a right that a seaman will forfeit only where willful misconduct is shown. *Farrell v. United States,* 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850 (1949); *Aguilar v. Standard Oil Co.,* 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107 (1942). "Only some wilful misbehavior or deliberate act of indiscretion suffices to deprive the seaman of his protection." *Aguilar, supra,* at 731, 63 S.Ct. at 934. I believe that such misconduct has been shown in this case. Were it not for plaintiff's provocative behavior, Arrequi would not have been incited to act as he did. Plaintiff persisted in taunting his assailant, thus inviting the unfortunate result. By so acting, he is precluded from recovering maintenance and cure and likewise precluded from recovering counsel fees or punitive damages.

In any event, since defendant was neither callous nor recalcitrant in refusing to pay maintenance, there is no entitlement to counsel fees or punitive damages. *See Robert v. S.S. Argentina,* 359 F.2d 430 (2d Cir. 1966).

Settle judgment on seven days' notice.