**Dionisio MARTINEZ and Maria Julia Davila, Plaintiffs, Appellants,**

v.

**SEA LAND SERVICES, INC., Defendant, Appellee.**

**No. 84–1794.**

United States Court of Appeals, First Circuit.

Argued March 5, 1985.

Decided May 30, 1985.

Harry A. Ezratty, San Juan, P.R., for appellants.

William A. Graffam, San Juan, P.R., with whom David C. Indiano and Jimenez & Fuste, San Juan, P.R., were on brief, for appellee.

Before COFFIN, BOWNES and BREYER, Circuit Judges.

BREYER, Circuit Judge.

Plaintiff, an ordinary seaman on the SS Boston, sued the ship's owners, claiming (insofar as here relevant) that the ship's "unseaworthiness" caused him to injure his back. The defendant moved for summary judgment. For purposes of deciding that motion, the district court, 589 F.Supp. 844, found

> While plaintiff was carrying two boxes of soft drinks from the main deck to the slop chest of the ship, the boxes slipped because the plastic sleeve on one of the boxes was loose. Plaintiff tried to prevent the boxes from falling and twisted his back.

The court nonetheless granted summary judgment for defendant. It concluded that these facts were insufficient to support a legal conclusion that the ship was "unseaworthy". The court noted that the doctrine of "unseaworthiness"—a warranty of fitness for duty, *see Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960); *Smith v. American Mail Line, Ltd.*, 525 F.2d 1148 (9th Cir. 1975)—extends to the ship itself, its appurtenances, its crew, its method of cargo storage, and to cargo containers, but not to the cargo itself. *Smith, supra,* 525 F.2d at 1150 (citing cases). The court went on to suggest that the soft drink sleeve was neither a cargo container nor part of the vessel's equipment or appurtenances, and therefore concluded that the warranty of seaworthiness does not apply.

We agree with the plaintiff, who has appealed, that the district court's granting of summary judgment was erroneous. Both parties agree that the soft drinks at issue here were not ordinary "cargo"—that is, "goods [or] merchandise ... conveyed in a ship for payment of freight." R. de Kerchove, *International Maritime Dictionary* (2d ed. 1961). Rather, these drinks were part of the ship's stores, destined for the crew's consumption on board and not covered by a bill of lading. And, we believe that the seaworthiness warranty of "fitness for duty" extends to material in which ships' stores are wrapped.

For one thing, the rationale underlying those cases holding that the unseaworthiness doctrine extends to "cargo containers," even if it does not extend to the cargo itself, applies to wrappings of the sort here at issue. That rationale was well stated by the Fourth Circuit as follows:

> Fault is not an essential element of the doctrine of "unseaworthiness" but conceptually and theoretically it may rest upon an irrebuttable presumption of opportunity to prevent harm. Once goods are put aboard, the condition of containers and packaging are within the control of the master of the vessel, and in most instances, although not all, defective packaging is discernible by inspection. If most defects are ascertainable it is a rough sort of justice and not intolerable

to assume that all are. Thus it is possible to say that the no-fault concept of unseaworthiness rests in part, at least theoretically, upon the ship's "fault" in failing to discern and correct conditions that may cause injury. Another reason, and perhaps a better one, for imputing responsibility for defective cargo to the ship is that once the ship is at sea the stress and strain of a voyage may break the packages, and it would thereafter be all but impossible to allocate responsibility as between the packager ashore and the ship's officers who subsequently undertake to move the cargo in a dangerous condition.

*Pryor v. American President Lines,* 520 F.2d 974, 981 (4th Cir.1975) (footnote omitted). The logic of this argument applies with at least equal strength to boxes of food or drink to be used by the crew during the voyage.

For another thing, this Circuit has specifically said that the unseaworthiness doctrine applies to ships' stores. *Doucette v. Vincent,* 194 F.2d 834, 837–38 (1st Cir. 1952) (maritime law of seaworthiness imposes duty on shipowner to provide a vessel sufficient in "materials, construction, equipment, stores, officers, men and outfit for the trade or service in which the vessel is employed"). *See also Rodriguez v. The Angelina,* 177 F.Supp. 242, 245 (D.P.R. 1959) (quoting *Doucette* ); *In re Gulf & Midlands Barge Line, Inc.,* 509 F.2d 713, 721 (5th Cir.1975) ("seaworthiness" in marine insurance contract means "that the materials of which the ship is made, its construction, the qualifications of the captain, the number and description of the crew, the tackle, sails, the rigging, stores, equipment, and outfit, generally, are such as to render it in every respect fit for the proposed voyage or service") (quoting Burglass, *Marine Insurance and General Average in the United States* 20–21 (1973)); *cf.* 46 U.S.C. § 10902 (statutory remedy for unseaworthiness applies to ship's "crew, hull, equipment, tackle, machinery, apparel, furniture, provisions of food or water, or stores"). Though apparently "ships' stores" cases have not arisen often, at least one district court has explicitly held the seaworthiness warranty applicable to their wrapping material, *see Wilson v. Twin Rivers Towing Co.,* 413 F.Supp. 154, 158–59 (W.D.Pa.1976) (unseaworthiness doctrine applies to improper packaging of meat destined for ships' stores).

Finally, we can find no reasoned distinction between the ship's gear and other material to which the doctrine plainly applies and the stores (or their wrappings) that are to be used on the voyage. *See generally Usner v. Luckenbach Overseas Corp.,* 400 U.S. 494, 499, 91 S.Ct. 514, 517, 27 L.Ed.2d 562 (1971) ("But our cases have held that the scope of unseaworthiness is by no means … limited [to defective conditions of a physical part of the ship itself.] A vessel's condition of unseaworthiness might arise from any number of circumstances.").

For these reasons, the defendant's motion for summary judgment should have been denied. The judgment of the district court is *reversed, and the case is remanded for proceedings consistent with this opinion.*