[NOT FOR PUBLICATION] [NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT


No. 97-1776

JOHN FORD,

Plaintiff, Appellee,

v.

WOODS HOLE, MARTHA'S VINEYARD AND
NANTUCKET STEAMSHIP AUTHORITY,

Defendant, Appellant.


No. 97-2007

JOHN FORD,

Plaintiff, Appellant,

v.

WOODS HOLE, MARTHA'S VINEYARD AND
NANTUCKET STEAMSHIP AUTHORITY,

Defendant, Appellee.


APPEALS FROM THE UNITED STATES DISTRICT COURT

FROM THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge] 



Before

Selya, Boudin, and Lynch, Circuit Judges. 


Thomas E. Clinton with whom Clinton & Muzyka, P.C. was on brief 
for defendant.
David F. Anderson with whom Latti Associates LLP was on brief for 
plaintiff.



February 20, 1998  


Per Curiam. The Woods Hole, Martha's Vineyard and 

Nantucket Steamship Authority ("the Steamship Authority")

appeals from a jury verdict awarding damages to John Ford.

Ford was an able bodied seaman employed on the Steamship

Authority's M/V Eagle, a passenger and car ferry operating

between Hyannis and Nantucket, Massachusetts. On the day of

Ford's misfortune, February 24, 1995, the Eagle was laid up

for general maintenance in Woods Hole, Massachusetts. 

The drama began when one of Ford's fellow seamen, Byron

Costa, approached a paint trailer on the pier next to the

ship. Danny Pryor, the ship's boatswain and Costa's brother-

in-law, was with him. Costa was holding a "manhelper," a

long wooden pole with a metallic tip, designed to connect to

a paint roller to increase a painter's reach. Inside the

paint trailer, another seaman named Serephine Rodrigues was

responsible for distributing tools and mixing paint for use

in maintenance tasks. Costa asked Rodrigues to mix him some

epoxy paint; Rodrigues refused, citing his instructions that

he was only to issue oil-based paints. A quarrel ensued, and

Rodrigues eventually acceded to Costa's demands and began

mixing the epoxy paint. 

While Rodrigues was at work, Costa continued to argue

with him. At some point, Rodrigues became frustrated and

told Costa to "leave me alone" and "get back in the boat."

Rodrigues also threw a light rag, which hit Costa in the head

-2- -2-

and slipped off. Costa swung the manhelper back with both

hands and then forward in Rodrigues's direction. 

Prior to this moment, Ford had approached the trailer to

return some tools. While inside the trailer, he heard the

altercation escalate and "knew something was going to pop."

Ford emerged from the trailer just as Costa swung the

manhelper at Rodrigues. The manhelper struck Ford in the hip

and then glanced off Rodrigues's hand, which had been raised

to ward off the blow. Ford has been seriously disabled by

the resulting injury.

Ford sued the Steamship Authority in the district court,

alleging negligence under the Jones Act, 46 U.S.C. 688,

unseaworthiness, and an entitlement to maintenance and cure

under general maritime law.1 On October 28, 1996, a jury

awarded Ford $740,000 for negligence and unseaworthiness,

prejudgment interest at a rate of 6% (totaling $57,172.60),

and $23,000 for maintenance and cure. The district court

entered judgment on the verdict on November 26, and amended

 

1Both parties assume that the latter two claims fall
under the admiralty jurisdiction of the federal courts. It
is not entirely clear that they satisfy the "location test"
of admiralty jurisdiction, namely, that the injury "occurred
on navigable water or . . . injury suffered on land was
caused by a vessel on navigable water." Jerome B. Grubart, 
Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 
(1995). But Ford's claim under the Jones Act provides
federal question jurisdiction under 28 U.S.C. 1331, so the
other claims fall within the court's pendent jurisdiction.
See Romero v. International Terminal Operating Co., 358 U.S. 
354, 380-81 (1959).

-3- -3-

the judgment on May 1, 1997, after the Steamship Authority

pointed out a mathematical error. 

The Steamship Authority now appeals the verdict of

unseaworthiness and negligence. At oral argument, the

Steamship Authority correctly conceded that the verdict may

be reversed only if the jury could not reasonably have found

for Ford on either theory. Because we find that the verdict

of unseaworthiness is supported by the record, we do not

address the issue of Jones Act negligence, which involves the

separate question whether the Steamship Authority was on

notice of Costa's proclivity for violence.

It is common ground that a vessel owner may be found in

breach of the warranty of seaworthiness if one seaman is

assaulted by another. Boudoin v. Lykes Bros. S.S. Co., 348 

U.S. 336, 338-39 (1955). The decisive question is whether

the assaulting seaman was "equal in disposition and

seamanship to the ordinary men in the calling." Id. at 338 

(quoting Keen v. Overseas Tankship Corp., 194 F.2d 515, 518 

(2d Cir. 1952)). Our limited task on appeal is to determine

whether Ford presented enough evidence so that a rational

jury could conclude that Costa was worse in disposition than

the ordinary seaman.

No one factor is conclusive in determining whether an

assailant's disposition is substandard. We have held that a

plaintiff may carry his burden of proof in two ways: either

-4- -4-

by showing that the particular assault on the plaintiff

involved a dangerous weapon, or by adducing evidence of the

assailant's "quarrelsome nature" in general. Connolly v. 

Farrell Lines, Inc., 268 F.2d 653, 656 (1st Cir. 1959). Ford 

presented evidence of both. There is little doubt that Costa

hit Ford with a dangerous weapon, namely, a thick wooden pole

five or six feet long and tipped with metal. The jury heard

testimony stating that Costa was specifically attempting to

hit Rodrigues, that he swung with both hands, and did not

check his swing. Rodrigues also testified that his head was

at the same height as the point where Ford's hip was struck.

We do not think the jury would be irrational in concluding

that this was a particularly violent act that revealed

Costa's disposition to be unequal to that of ordinary

sailors.

The jury also heard evidence of Costa's penchant for

violence on other occasions. Other seamen testified to two

physical fights that Costa had instigated. Costa also once

stated that he would kill another crewmember, although no

violence ensued. A Steamship Authority captain who had

worked with Costa testified that Costa had a reputation for

belligerence. The Steamship Authority countered this

evidence at trial and still disputes it, but the jury was

entitled to accept the version of the facts favorable to

Ford.

-5- -5-

Ford argues that the appropriate comparison of Costa's

disposition is not with ordinary sailors generally, but with

ordinary sailors employed by the Steamship Authority, whom

Ford says are a pacific and docile group. Because it would

not affect the outcome, we leave resolution of this issue for

another day. Ford also cross-appeals on two procedural

issues regarding, respectively, the Steamship Authority's

failure to renew its motion for judgment as a matter of law

and untimely filing of its notice of appeal. Both are moot

in light of our ruling on the merits.

Affirmed. 

-6- -6-