**Ruth WILSON, Plaintiff,**

v.

**TWIN RIVERS TOWING COMPANY, a corporation, Defendant.**

**Civ. A. No. 75–489.**

United States District Court,
W. D. Pennsylvania.

May 10, 1976.

Paul L. Hammer, Pittsburgh, Pa., for plaintiff.

Karl Alexander, Pittsburgh, Pa., for defendant.

## OPINION

GOURLEY, Senior District Judge:

This is an admiralty action for maintenance and cure and unseaworthiness with jurisdiction under the general maritime laws.[1] Essentially, plaintiff's action can be separated into three claims which are premised upon illnesses and injuries which developed while in defendant's employ.

### I

Plaintiff's first claim arises out of her becoming ill on July 25, 1972, while in service of defendant's vessel M/V Arkwright. The record reflects that on July 25, 1972, plaintiff, while on duty, became so violently ill that it was necessary to take her off the ship to seek medical treatment. The following day the plaintiff was admitted to the Allegheny General Hospital with appendicitis and underwent an emergency appendectomy. As a result of this illness, the plaintiff, Ruth Wilson, did not return to work until November 1, 1972 and at no time during this period, from July 25, 1972 to November 1, 1972, did she receive any maintenance and cure from the defendant.[2]

The broad scope of maintenance and cure has been characterized in *Farrell v. U. S.*, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850 (1949) as follows:

> "It has been the merit of the seaman's right to maintenance and cure that it is so inclusive as to be relatively simple, and can be understood and administered without technical considerations. It has few exceptions or conditions to stir contentions, cause delays, and invite litigations. The seaman could forfeit the right only by conduct, whose wrongful quality even

---

1. On October 15, 1975, the Court approved a pretrial stipulation whereby plaintiff withdrew its cause of action under the Jones Act and its claim against Consolidated Coal Corporation as a defendant.

2. The parties have stipulated that if maintenance is awarded for this period that it be the sum of $8/day.

simple men of the calling would recognize —insubordination, disobedience to orders, and gross misconduct. On the other hand, the Master knew he must maintain and care for even the erring and careless seaman, such as a parent would a child. For any purpose to introduce a graduation of rights and duties based on some relative proximity of the activity at time of injury to the 'employment' or the 'service' of the ship, would alter the basis and be out of harmony with the spirit and function of the doctrine and would open the door to the litigiousness which has made the landman's remedy so often a promise to the ear to be broken to the hope."

The law is most firm and definite that recovery for maintenance and cure is available to any seaman who becomes ill in the service of the ship. *Cox v. Dravo Corp.,* 517 F.2d 620 (3rd Cir. 1975). Unquestionably, the record supports the finding that the plaintiff was entitled to maintenance and cure for the ninety-six days in which she was off from work due to her illness. Moreover, when a claim for maintenance and cure is made, there is an affirmative duty upon the ship owner to investigate the claim with reasonable diligence. *Vaughan v. Atkinson,* 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962). In the instant proceeding no such attempt was made; nor was the defendant able to present to the satisfaction of the Court, any justifiable reason or excuse for its failure to do so. Accordingly, the Court is of the firm belief that the plaintiff is entitled to interest at the rate of 6% on the total amount that is found due for maintenance and cure. Likewise, the Court is satisfied that under all the facts and circumstances, defendant's conduct and its failure to make those payments consistent with the provisions of law, justifies the awarding to plaintiff fair and reasonable attorney fees. *Vaughan v. Atkinson* (supra).

■ However, the Court can find no merit to plaintiff's contention that she is entitled to recover her lost wages as a part of her maintenance and cure. The record reveals that the plaintiff's only claim for the period between July 25, 1972 and November 1, 1972 is for maintenance and cure and not under the Jones Act or doctrine of unseaworthiness. Maintenance and cure is designed to provide a seaman with food and lodging when he becomes sick or injured in the ship's service, and it extends during the period when he is incapacitated to do a seaman's work and continues until he reaches maximum care. *Calmar Steamship Corp. v. Taylor,* 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993 (1938). Maintenance and cure differs from rights such as wages which are normally classified as contractual. As stated in *Cortes v. Baltimore Insular Lines, Inc.,* 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368 (1932):

"The duty . . . is one annexed by law to a relation, and annexed as an inseparable incident without heed to any expression of the will of the contracting parties."

In view of the above, plaintiff is entitled to the following recovery as a result of her illness on July 25, 1972:

| | |
|---|---|
| Maintenance—$8/day—96 days | $ 768.00 |
| Allegheny General Hospital | 972.05 |
| Dr. Zemel | 350.00 |
| | $2,090.05 |
| Interest at 6% | 125.40 |
| Total | $2,215.45 |
| Attorney fees (⅓) | $ 705.15 |

## II.

■ Plaintiff's second claim is made for unseaworthiness based on the aggravation of her pain and discomfort which she claims was experienced after her return to work on November 1, 1972. In substance, plaintiff asserts that it was the defendant's failure to provide her with maintenance and cure when she became unable to work in July, 1972, that forced her to return to work before she was fully cured. Plaintiff also contends, that in view of her physical condition, her duties as well as the working conditions aboard defendant's ship, aggravated the pain and discomfort in her abdominal area.

The Court has made a most detailed and exhaustive review of the record and is of the firm belief that the evidence does not support a finding of unseaworthiness on the part of the shipowner or the crew. Very simply, the Court can find no evidence of any condition or circumstance prior to March 15, 1974, which would make defendant's vessel unseaworthy. The record reveals that the plaintiff actively and willfully sought to return to her duties on the ship. Before returning to work on November 1, 1972, plaintiff presented defendant with two fit for duty slips. The first was signed by her own personal physician, Dr. Theodore Thomas, and the second was signed by the company doctor, Dr. George Wright.[3] Dr. Wright examined plaintiff in October of 1972 and found her sufficiently cured and fit for duty as of November 1, 1972. At no time during said examination did plaintiff make any complaints of pain or discomfort with respect to her prior illness nor did she advise Dr. Wright as to what Dr. Thomas orally stated to her.

Plaintiff's own testimony reveals that she spent nearly thirty years on the river working as a cook and chambermaid and that she was at one time married to a captain of a ship. Plaintiff also testified that the National Maritime Union informed her that she was entitled to maintenance and cure for that period following her illness in July, 1972. In view of all the experience and knowledge which plaintiff had accumulated over the years through her constant association and contact with seamen and their way of life, the Court finds it most difficult to perceive, let alone accept, that she was without knowledge as to her right to receive maintenance and cure following her illness in July of 1972.

As the medical evidence clearly reflects, plaintiff was found to be physically fit to return to duty on November 1, 1972, Although plaintiff claims that she was not completely cured at said time, the record reveals that plaintiff held herself out to be physically fit and that she knowingly and intentionally failed to disclose her alleged complaints to the defendant. Under these circumstances a Court would be hard pressed to hold a defendant responsible for the aggravation of an injury which plaintiff knew about but willfully withheld from the defendant. See: *Tawada v. U. S.,* 162 F.2d 615 (9th Cir. 1947).[4]

■ Moreover, the Court can find no basis in law to make any award based on unseaworthiness where a claimant was not absent from work and where he did not get any medical attention. The record in the instant proceeding reveals that the plaintiff adequately and satisfactorily performed her duties during said period and did not get any medical attention. Nor is plaintiff entitled to any award for maintenance during this period since she was receiving her wages. *In re Consolidation Coal Company,* 296 F.Supp. 837 (W.D.Pa.1968).

### III.

Plaintiff's final claim is made for unseaworthiness based on injuries to her back and abdomen which occurred on March 15, 1974, when she attempted to move a box of frozen meat from the floor of the ship into its freezer.[5] It is plaintiff's contention that the stores in said box exceeded one hundred pounds in weight and were improperly packaged so as to render the vessel unseaworthy.

■ The law is well settled that the owner of a vessel has a duty to provide a seaworthy vessel and appliances, which duty is absolute, nondelegable, and not conditioned on fault or notice. *Moragne v.*

---

**3.** Dr. Thomas testified at the trial in this proceeding that, although he signed the fit for duty slip, he did so because plaintiff was so persistent about returning to her job. Actually, he felt and so advised plaintiff, that she was not sufficiently cured to go back to work at that time.

**4.** In *Tawada* the Court held that a seaman who, knowing that he is inflicted with a disabling disease, conceals that fact and holds himself out fit for duty, is not entitled to maintenance and cure.

**5.** There is no claim for maintenance and cure since the same has been accorded to plaintiff since March 15, 1974.

*States Marine Lines,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). It appears to be undisputed from all the evidence presented, that the box of meat which plaintiff attempted to move was clearly too heavy and improperly packaged and, therefore, rendered the vessel unseaworthy. Once goods are put aboard, the condition of containers and packaging are within the control of the Master of the vessel. *Pryor v. American President Lines,* 520 F.2d 974 (4th Cir. 1975). In the instant proceeding the Court firmly believes that the defective box of stores should have been discernible by inspection and that defendant's failure to ascertain and correct said defect was the direct and proximate cause of plaintiff's injury. However, in view of all the facts and circumstances presented, the Court can only conclude that the defendant was ⅓ at fault for the accident and that there was no unseaworthiness on the part of the vessel or the crew as to any degree except as to the box of meat and the manner in which it was packaged. As stated in *Mroz v. Dravo Corp.,* 429 F.2d 1156 (3rd Cir. 1970):

"Generally, it has been said that contributory negligence is the neglect of the duty imposed upon a person to exercise ordinary care for his own protection and safety which is a legally contributing cause of an injury. (Footnote omitted.) In determining whether an injured person has been guilty of contributory negligence the standard of conduct to which he must conform is that of a reasonably prudent person under the circumstances. If a person by his own action subjects himself unnecessarily to danger which should have been anticipated and is injured thereby he is guilty of contributory negligence."

The record clearly reveals that any crew member could have and would have extended plaintiff assistance if she would have asked. The deckhand who brought the stores into the kitchen was a personal friend and a boarder at plaintiff's home and stated that he would have carried the box to the freezer if she had asked him. Proof of that fact is Mr. Ireland's returning to the kitchen area to do that particular job after performing his other duties. The record also reveals that the plaintiff was most careless and negligent in trying to move a box of meat which she knew was too heavy and unmanageable. It would have been much easier and safer for plaintiff had she decided to lift the packages separately from the box to the freezer unit, which was approximately five feet away, instead of trying to maneuver the entire box of meat.

The Court is completely satisfied that the medical evidence of record establishes that plaintiff, as of May 31, 1974, was permanently disabled and unable to pursue the work for which she was trained and qualified. Although there appears to be some dispute as to plaintiff's recovery from her surgery in her abdominal area, the Court is convinced, after reviewing all the medical evidence of record, that the injury to plaintiff's back is a real and permanent one, which will preclude her from engaging in her chosen occupation.

In view thereof, the plaintiff is entitled to the following recovery:

| | |
|---|---|
| Loss of wages reduced to present worth at the stipulated interest rate of 5% | $69,154.00 |
| Pain, suffering, and inconvenience | 30,000.00 |
| Total | $99,154.00 |
| Plaintiff was ⅔ at fault therefore only ⅓ recovery | $33,051.33 |
| Amount due | $33,051.33 |

Findings of fact and conclusions of law have not been separately stated but are included in the body of the foregoing opinion as specifically authorized by Rule 52(a) of the Federal Rules of Civil Procedure.

An appropriate Order is entered.